Matthew M. Levy, J.
This is a motion by the defendants under rule 106 of the Rules of Civil Practice to dismiss each of three causes of action set forth in the complaint on the ground of insufficiency on its face; or, in the alternative, under rule 102, to require the service of an amended complaint making it more definite or certain in respect of the matters enumerated in the defendants’ notice of motion.
The plaintiff is the administratrix (with the will annexed) of S. Quentin Lupo, deceased. The first cause is leveled only against the defendant Columbia Manicure Manufacturing Co., Inc., and seeks specific performance of a contract for the sale of stock, entered into between that defendant, as seller, and the deceased and John Lupo, as buyers. It is alleged in substance in the first cause of action that, on October 16, 1951, Columbia agreed in writing to sell all of the outstanding capital stock of the defendant Flowery Manicure Products Corporation, which Columbia then owned, to the two Lupos, Quentin and John. The agreement is annexed to the complaint and shows that the stock consisted of 101 shares; that it was to be sold as a single unit for one lump sum or price, to be determined on the basis of its book value as of December 31, 1951; that the certificates, duly indorsed, were to be delivered on January 1, 1952; and that the purchase price, when fixed and determined, was to be paid in instalments, $1,000 on or before January 1, 1952, and the balance in quarter-annual instalments of $500 each, commencing January 1, 1953, with interest at 4%, until the full price was paid. The agreement further provided that, in the event of default in the payments thereunder and if such default continued for 60 days after written notice to the buyers, then (unless otherwise agreed to in writing) such number of shares as equaled the unpaid balance due to the seller would be forthwith assigned and transferred by the buyers to the seller and all obligations with respect to the unpaid balance would cease. The plaintiff alleges that the book value of the stock was fixed at $4,559.25, one half of which was to be paid by Quentin; that he paid to Columbia the sum of $500, as part payment for the shares of stock so purchased by him; that Quentin died on October 10,1954; that on September 9, 1955, by mail, the plain *415 tiff tendered payment to Columbia of the sum of $2,043.61, being the balance due “ for the shares of stock purchased by ¡3. Quentin Lupo ”, inclusive of interest; that Columbia rejected the tender and attempted to return to the plaintiff the sum of $500, the amount paid by Quentin on account of the purchase price; that Columbia has failed, refused and still refuses to transfer to the plaintiff the stock mentioned in the agreement, or any part of such stock; and, finally, that the stock in question has a substantial value which cannot readily be obtained in the open market and therefore plaintiff has no adequate remedy at law.
In passing upon the sufficiency of the first cause of action, it becomes necessary to determine whether the agreement referred to is indivisible as between the buyers, Quentin and John, visa-vis Columbia, or whether it created severable rights in the buyers. Where several persons bind themselves together, without words of severance, a joint liability is created (see 2 Willis-ton on Contracts [rev. ed.], §§ 317, 322, 325). For example, if the contract stated “ share and share alike ” or that the stock be distributed “ pro rata according to their respective interests ”, these would be words of severance and would create several rights (Emmeluth v. Home Benefit Assn., 122 N. Y. 130; Villard v. Moyer, 54 Misc. 369, affd. 123 App. Div. 629). There is no such or similar language in the contract now under scrutiny. It is clear to me that the agreement is joint. The buyers were the president (Quentin) and the secretary pro tern (John) of the seller corporation, and the agreement was signed by them as such for the seller and by them individually on their own behalf as buyers. The agreement provided for the sale of all of the seller’s stock for one lump sum to the two individually, collectively referred to in the writing as “ the Buyers ” and throughout treated therein as one party. The contract was for the complete transfer by Columbia of all of its stockholdings in Flowery to both of the two buyers together, and not for the piecemeal splitting of the shares to two individual isolated purchasers. By the terms, nature and obvious purpose of the contract, it is apparent that the buyers assented to all the promises as a single unit and that the performance by the parties was to be dependent upon the entire performance by the seller and both of the buyers. This indivisibility of the contract is not destroyed because the stock — the subject of the sale — consists of shares that might be divided proportionally or because the buyers will take the same as tenants in common (3 Williston on Contracts [rev. ed.], §§ 862, 863; Bronx County Appliance Corp. v. Brecher, 113 N. Y. S. 2d 622, 623-625; American Sur. Co. of N. Y. v. Rosenthal, 206 Misc. 485, 488-489). There *416 being here no language in the contract to the contrary, the liability of the buyers herein is presumptively joint, and nothing is alleged warranting the division (for the purpose of enforcing the contract) of the stock or payments to be made thereunder. Under the terms of the agreement, $1,000 was to have been paid by the buyers on or before January 1, 1952. The plaintiff has failed to allege the making of this payment or the compliance with other conditions of the contract, but has merely alleged making a payment of $500 and a tender of half of all moneys due to Columbia under the agreement. Indeed, it is significant that the other part of the “ buyers ” — John — is not a party plaintiff or party defendant in the first cause of action (ef. Civ. Prac. Act, § 193), and that the plaintiff has not pleaded due performance or excuse for nonperformance (cf. Rules Civ. Prac., rule 92). Accordingly, the first cause is insufficient on its face, ánd it is therefore dismissed.
In her second cause of action, the plaintiff sues Columbia, Flowery and John. She there seeks to compel the holding of a meeting of the stockholders of Flowery for the purpose of electing directors. In support thereof, she repeats the allegations of the first cause of action, and in addition, she alleges: that pursuant to the agreement heretofore referred to, title to 50% shares of capital stock vested in Quentin as of January 1, 1952, and that he was entitled thereby to exercise all of the rights of a stockholder with respect thereto; that on April 16, 1955, the annual meeting of the stockholders of Flowery was held (at which the plaintiff was present) for the purpose of electing directors, but, by reason of a dispute, the meeting was adjourned; that by notice dated May 18, 1955 the meeting was called for June 1, 1955, but that, prior to June 1, by agreement of the parties, it was again adjourned; that by letter, dated July 21,1955, the plaintiff demanded that the meeting be held, which demand was rejected by letter of August 2,1955; and that, upon information and belief, a purported meeting of the stockholders of Flowery was held in or about September, 1955 (without notice to the plaintiff) which meeting was “ not regularly or duly called ” and was not held “ in accordance with the applicable provision of the by-laws * * * or statutes of the State of New York pertaining thereto ”; and that the defendants “ have wilfully, wrongfully and illegally usurped unto themselves the rights of the plaintiff as stockholder of Flowery ’ \ In my view, the second cause of action falls by reason of the inadequacy of the first; and it is otherwise legally insufficient. The second count is predicated upon the assumption that, as of January 1, 1952, title to 50% shares vested in Quentin, and that he was *417 entitled thereby to exercise all the rights of a stockholder with respect thereto. The allegations are unwarranted conclusions of fact or law and have no value in sustaining the pleading (Avey v. Town of Brant, 263 N. Y. 320; Kalmanash v. Smith, 291 N. Y. 142, 154).
In her third cause of action, also against all of the defendants, the plaintiff seeks to declare null and void all meetings of stockholders and directors of Flowery which have been held since Quentin’s death. In this-count, the plaintiff reiterates each and every allegation contained in both the first and second causes of action and adds that, since the date of Quentin’s death in October, 1954, attempts have been made by all of the defendants to hold meetings of stockholders and directors of Flowery, without recognition of the rights of the deceased’s estate and that these meetings were not held in accordance with the applicable provisions of the by-laws of the corporation or the statutes of the State of New York relative thereto. The third cause of action contains all the defects, conclusions of law and shortcomings of the first and second causes of action and the additional innocuous assertion that certain “ attempts ” have been made by the defendants to hold other meetings “ not regularly or duly called
The motion to dismiss is granted, with leave to the plaintiff to replead within 20 days after service of a copy of the order hereon with notice of entry. In view of this disposition, there is no need to consider the alternative relief asked.